# THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

UNITED STATES OF AMERICA,

v.

ENRIQUE COSTAS-TORRES, and
CARLOS MELÉNDEZ-GONZÁLEZ,

Defendants.

Criminal No. 15-649 (ADC)

## OPINION AND ORDER

On June 16, 2017, defendant Enrique Costas-Torres (Costas) timely moved the Court, pursuant to Federal Rule of Criminal Procedure 33(b)(1), to vacate his judgment of conviction, dated December 19, 2016, and to grant him a new trial based on allegedly newly discovered evidence. **ECF No. 230**. On the same date, co-defendant Carlos Meléndez-González (Meléndez) moved the Court to allow him to join Costas's motion, although presumably with respect to his own judgment of conviction, also dated December 19, 2016. **ECF No. 231**. The Court now grants Meléndez's motion to join, but denies defendants' joint Rule 33 motion on two grounds.

First, defendants' appeals of their respective judgments are currently pending before the Court of Appeals. *See* **ECF Nos. 196**, **200**, **204**, **216**, **224**. And, this Court "may not grant a motion for a new trial until the appellate court remands the case." Fed. R. Crim. P. 33(b)(1). However, the Court of Appeals has not yet remanded the case. Thus, this Court may not grant the motion on the merits, even if it were inclined to do so, which it is not.

Second, defendants' motion is patently meritless. In it, they claim to warrant a new trial because the Government did not disclose alleged Brady material consisting of reports by federal investigators, dated March 2016 and March 2017, about their interviews of separately-charged defendant Ángel Perales-Muñoz (Perales) on his experiences as a recruiting assistant in the G-RAP program – the program that Costas and Meléndez are convicted of defrauding. *See* **ECF No. 230**. Defendants claim that the interview reports contain "clear exculpatory evidence" that "directly contradicts the version of facts related by" the G-RAP administrator who testified for the Government at their trial. *Id*. at 4. Defendants assert that they could not "proper[ly] cross-examin[e]" the administrator due to the "nondisclosure" of the reports. *Id*. at 6. However, there are obvious problems with that claim, which show why a new trial is not warranted here.[1] *See United States* v. *García-Pastrana*, 584 F.3d 351, 390 (1st Cir. 2009) ("The remedy of a new trial must be used sparingly, and only where a miscarriage of justice would otherwise result.").

Defendants assert, without explanation or development, that the above interview reports are Brady material, *see* **ECF No. 230** at 4-8, but the Court disagrees, finding their arguments to the contrary so skeletal as to be waived. *United States* v. *Santiago-González*, 825 F.3d 41, 48 (1st Cir. 2016) ("It is not enough merely to mention a possible argument in the most skeletal way, leaving the court to do counsel's work, create the ossature for the argument, and put flesh on its

---

[1] The most obvious problem with defendants' Brady claim is that two of the interviews of Perales took place after their August 2016 trial. *See* **ECF No. 230** at 4 n.2 (acknowledging that two of the interviews occurred in March 2017). Needless to say, "[f]or a Brady violation to occur, the evidence must be . . . in existence" by the time of trial. *See United States* v. *Garza*, 435 F.3d 73, 76 (1st Cir. 2006) (citing *United States* v. *Agurs*, 427 U.S. 97, 105-06 (1976)). After all, the Government cannot turn over evidence that does not yet exist.

bones.") (quoting *United States* v. *Zannino*, 895 F.2d 1, 17 (1st Cir. 1990)). "Brady dictates that the government must 'disclose evidence favorable to an accused that is material either to guilt or to punishment.'" *United States* v. *Bulger*, 816 F.3d 137, 153 (1st Cir. 2016) (internal quotation marks omitted) (quoting *United States* v. *Cruz-Feliciano*, 786 F.3d 78, 87 (1st Cir. 2015)); *see also Brady* v. *Maryland*, 373 U.S. 83, 87 (1963); *Giglio* v. *United States*, 405 U.S. 150, 150-51, 154-55 (1972). The above reports, however, simply relate Perales's (self-serving) recollection of his participation as a recruiting assistant in the G-RAP program. *See* **ECF No. 230-1** (copies of some, if not all, of the reports). The reports provide no information about defendants' participation in the program and, thus, do not shed any light on their conduct. Furthermore, Perales's personal experiences in, and knowledge of, the program are irrelevant to defendants' guilt and punishment, absent a reason to impute to defendants either the contents of Perales's mind or, perhaps, a similar set of experience and knowledge. *Cf. United States* v. *Meade*, 110 F.3d 190, 194 & n.4 (1st Cir. 1997) (on the role of communication in the collective-knowledge corollary of the fellow-officer rule).

For example, according to one of the reports, Perales claimed that Docupak, the company that administered G-RAP, had "instructed" him to get the personal-identifying information of enlistees "from the recruiters." **ECF No. 230-1** at 8. Assuming that Perales was telling the truth without omitting an important qualification, the mere "fact" that Docupak had issued such an instruction is irrelevant to defendants' guilt or punishment unless they had also received (or, at least, had heard of) the instruction. Only then might the alleged instruction mitigate their guilt or punishment. However, once we recognize that those are the circumstances under which the

alleged instruction becomes relevant, Perales's hearsay recollection would no longer constitute Brady material because defendants would already know the hearsay's "essential facts" (namely, that there had allegedly been such an instruction). *See Ellsworth* v. *Warden*, 333 F.3d 1, 6 (1st Cir. 2003) (en banc) (quoting *United States* v. *LeRoy*, 687 F.2d 610, 618 (2d Cir. 1982)). Similarly, the hearsay would not count, either, as "newly discovered evidence" for purposes of Rule 33(b)(1). *See United States* v. *Lenz*, 577 F.3d 377, 380-81 (1st Cir. 2009) (finding that new testimony about a conversation does not constitute "newly discovered evidence," if the defendant already knew "the substance of [the] conversation."). In any event, it is clear from the reports that the hearsay in them about Perales's recollections are ill-suited to prove that G-RAP participants convicted of defrauding G-RAP did not intend to defraud it. After all, in the reports, Perales admits to not understanding G-RAP, **ECF No. 230-1** at 1; to not taking its training modules seriously and even deliberately failing to learn from them, *id*. at 3; and also to knowing that recruiters and recruiting assistants were, in fact, "committing fraud" against G-RAP, *id*. at 8. Thus, even if the Perales hearsay were somehow admissible, *see* Fed. R. Evid. 802, the Court fails to see how it would be either favorable to defendants or material to their defense. *See Ellsworth*, 333 F.3d at 4-5.

Perhaps, however, defendants do not believe that the hearsay in the interview reports is Brady material because it is admissible itself, but because it represents a promising lead to strong exculpatory evidence. *See id*. at 5 (recognizing that inadmissible evidence can constitute Brady material under such circumstances). But this alternative Brady claim – which, again, defendants do not articulate and, thus, have waived – is equally unavailing. According to defendants, the

hearsay is significant because it indicates that participants in the G-RAP program were poorly trained and supervised and that everyone involved in G-RAP, from Docupak on down, treated the personal-identifying information of enlistees carelessly. *See* **ECF No. 230** at 5, 8. Defendants, however, do not show how those leads, if disclosed pretrial, "would, or would likely, have led to valuable new evidence which was itself arguably admissible." *See Ellsworth*, 333 F.3d at 5. In any event, the Court does not see how basic facts or evidence about the alleged mismanagement of the program was "unknown or unavailable to the defendant[s] at the time of trial." *See García-Pastrana*, 584 F.3d at 390 (quoting *United States* v. *Del-Valle*, 566 F.3d 31, 38 (1st Cir 2009) (setting forth the standards for "newly discovered evidence" under Rule 33)). After all, defendants have long complained that "[l]ack of management and oversight of the [G-RAP] contract contributed to the creation of an environment in which widespread fraud would occur and continue." **ECF No. 36** at 6 (defendants' motion to dismiss, filed approximately six months before trial). Thus, it is disingenuous for defendants to claim that the information contained in the Perales hearsay constitutes newly discovered evidence warranting a new trial.

Finally, the only use that defendants envision for the "new" hearsay evidence contained in the interview reports is the role of factual support for a "proper cross-examination" of the G-RAP administrator who testified for the Government. *See* **ECF No. 230** at 6. As indicated above, however, defendants already had a good-faith basis for any relevant and appropriate questions that they might want to ask on that subject. *See, e.g.*, **ECF No. 36** at 3-7. And, by asserting that the hearsay is important because it corroborates what they allegedly already knew and it could

be used to test the credibility of a Government witness's testimony during cross-examination, defendants have failed to bear the "'weighty burden' of establishing that" their purportedly new evidence "is material and not merely cumulative or impeaching." *See García-Pastrana*, 584 F.3d at 390 (quoting *Del-Valle*, 566 F.3d at 38). In fact, defendants have utterly failed to establish that they meet any of the basic requirements for a new trial under Rule 33(b), *see id.*, choosing instead merely to parrot the language of the requirements without any developed argumentation, *see* **ECF No. 230** at 7, thereby waiving the claim. *See United States* v. *González*, 857 F.3d 46, 57 (1st Cir. 2017) (quoting *Zannino*, 895 F.2d at 17).[2]

In the end, it appears to the Court that defendants find the Perales hearsay significant not because it is (in any way) newly discovered evidence for purposes of Rule 33(b)(1), but because defendants believe that something in that hearsay must have moved the Government to dismiss, with leave of the Court, the criminal actions against Perales. *See* **ECF No. 230** at 5. However, it is clear to the Court that defendants' belief is nothing more than unwarranted speculation. The Government's motions to dismiss in each of those cases simply state that the Government had decided to "dismiss the Indictment in the interests of justice . . . after due consideration of the facts and circumstances of th[e] case." United States of America's Motion to Dismiss Indictment at 2, *United States* v. *Perales-Muñoz*, Crim. Nos. 15-655, 15-656, 15-657 (D.P.R. Apr. 11, 2017). The motions do not reveal specifically which facts and circumstances persuaded the Government to

---

[2] Defendants also perfunctorily raise a claim of prosecutorial misconduct based on the same alleged non-disclosure of Brady material. *See* **ECF No. 230** at 8. The Court finds the claim waived and, in any event, meritless for the same reasons, discussed above, that the underlying Brady claim is unavailing.

dismiss its prosecutions, nor whether those facts and circumstances had any bearing on Perales's factual guilt or innocence. Thus, any attempt to divine the Government's reasons from the bare record will be an exercise in guesswork. That said, it appears from the interview reports, which defendants submitted, that Perales "fully cooperate[d]" with the Government and then passed a polygraph test on whether he had ever given anything of value to a recruiter (in exchange for, say, the personally-identifying information of an enlistee). **ECF No. 230-1** at 11, 15-16. Needless to say, the Government might have properly factored those case-specific considerations, among others, into its decision to dismiss the Indictments against Perales.

In sum, the Court hereby **GRANTS** Meléndez's motion to join Costas's Rule 33 motion, *see* **ECF No. 231**, but **SUMMARILY DENIES** defendants' joint Rule 33 motion, *see* **ECF No. 230**.

**SO ORDERED**.

At San Juan, Puerto Rico, on this 19th day of June, 2017.

                **S/AIDA M. DELGADO-COLÓN**
                **Chief United States District Judge**